Filed Under Seal

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | **CRIMINAL NO. 24-** |
| v. | : | **DATE FILED:** |
| **MARY BLAKLEY** | : | **VIOLATIONS:** |
| a/k/a "Marye Blakley" | | |
| a/k/a "Mary Blakely" | : | **18 U.S.C. § 1349 (mail and wire fraud** |
| a/k/a "Mary Blakeley" | | **conspiracy – 1 count)** |
| a/k/a "Mary Davis" | : | **18 U.S.C § 1343 (wire fraud – 4 counts)** |
| a/k/a "Mary Venable" | | **18 U.S.C § 1341 (mail fraud – 3 counts)** |
| a/k/a "Mary Cammer" | : | **18 U.S.C. § 371 (conspiracy – 1 count)** |
| a/k/a "Rosemary Cammer" | | **Notice of forfeiture** |
| a/k/a "Rosemary Davis" | : | |
| a/k/a "Yvonne Davis" | | |
| a/k/a "Mary Blaksley" | : | |
| **FRED BLAKLEY** | | |
| a/k/a "Fred Blakely" | : | |
| a/k/a "Floyd Blakely" | | |

## INDICTMENT

### COUNT ONE
### (Mail and Wire Fraud Conspiracy)

### THE GRAND JURY CHARGES THAT:

At all times material to this indictment:

*The Defendants*

1.    Defendant MARY BLAKLEY, a/k/a "Marye Blakley," a/k/a "Mary Blakely," a/k/a "Mary Blakeley," a/k/a "Mary Davis," a/k/a "Mary Venable," a/k/a "Mary Cammer," a/k/a "Rosemary Cammer," a/k/a "Rosemary Davis," a/k/a "Yvonne Davis," a/k/a "Mary Blaksley," ("MARY BLAKLEY") was a resident of Lake Havasu City, Arizona, where she owned and operated what purported to be medical clinics through which she claimed to diagnose and treat a variety of diseases and medical conditions for persons throughout the United States (the "Blakley Clinics").

2.      Defendant MARY BLAKLEY held no medical licenses in Arizona, California, Nevada, or Utah, the states in which the Blakley Clinics operated.

3.      Defendant FRED BLAKLEY, a/k/a "Fred Blakely," a/k/a "Floyd Blakely" ("FRED BLAKLEY") was also resident of Lake Havasu City, Arizona. He claimed to be currently married to defendant MARY BLAKLEY despite the fact that they were divorced from each other in Texas in or about December 2001. Defendant FRED BLAKLEY was the business partner of defendant MARY BLAKLEY in, and assisted defendant MARY BLAKLEY with the operation of, the Blakley Clinics.

*The Federal Food and Drug Administration*

4.      The United States Food and Drug Administration ("FDA") was the federal agency responsible for protecting the health and safety of the public by enforcing the Federal Food, Drug, and Cosmetic Act (the "Act") and ensuring, among other things, that drugs intended for human use were safe and effective. The Act regulates medical devices, human and animal drugs, dietary supplements (regulated as food), and cosmetics. The Act has varying requirements for each of the product areas it regulates, with some areas (e.g., drugs and devices) requiring more regulatory oversight than others (e.g., cosmetics).

5.      The Act defines "drug" to include: (1) articles intended to diagnose, cure, mitigate, prevent, or treat disease in man or other animals; (2) articles intended to affect the structure or any function of the body of man or other animals; or (3) articles used as components of the above. 21 U.S.C. § 321(g)(1).

6.      Manufacturers of drugs, medical devices, and dietary supplements must register with the FDA and list their products so that the agency is aware they are manufacturing, packaging, processing, or holding a regulated product. Further, under the Act, drugs, medical

2

devices, and dietary supplements have labeling requirements.

7.  Whether an article or product is regulated by the FDA at all, and whether it is regulated as a drug, device, dietary supplement, or cosmetic, depends on the intended use of the article or product. Determining a product's intended use is an objective inquiry into the article's likely use and involves a review of both oral and written representations made by those promoting the article to users or prospective users.

*The Blakley Clinics*

8.  Through the Blakley Clinics, defendants MARY BLAKLEY and FRED BLAKLEY offered what purported to be medical treatment to the public at large. The central service performed by the Blakley Clinics was what defendant MARY BLAKLEY, defendant FRED BLAKLEY, and their employees and associates identified as the "full body scan." This scan consisted of an in-office procedure during which defendant MARY BLAKLEY, or an employee or associate who had received what purported to be training from defendant MARY BLAKLEY, operated what defendant MARY BLAKLEY, defendant FRED BLAKLEY, and their employees and associates claimed was an ultrasound machine enhanced by defendant MARY BLAKLEY's own proprietary "smart chip technology."

9.  Defendant MARY BLAKLEY, defendant FRED BLAKLEY, and their employees and associates, falsely and fraudulently claimed that the Blakley Clinics' full body scans, using defendant MARY BLAKLEY's purported "smart chip technology," could detect a variety of human diseases, illnesses, and conditions, including blood cancers, and candida in the bowel.

10.  Defendant MARY BLAKLEY, defendant FRED BLAKLEY, and their employees and associates, falsely and fraudulently claimed that the Blakley Clinics' full body

3

scans, using defendant MARY BLAKLEY's purported "smart chip technology," could also treat and cure a wide range of human diseases, illnesses, and conditions, including by: (i) "driving" a substance known as Aetheion into the body to kill cancer; (ii) "cleaning" the lungs and brainstem; and (iii) removing kidney stones.

11.     Defendant MARY BLAKLEY, defendant FRED BLAKLEY, and their employees and associates, falsely and fraudulently claimed that the Blakley Clinics' full body scans, using defendant MARY BLAKLEY's purported "smart chip technology," could perform a multiplicity of other medical procedures including conducting colonoscopies, completing non-invasive prostate exams, measuring prostate-specific antigen ("PSA") levels, and performing electrocardiograms ("EKGs").

12.     Ultrasound is in fact a commonly used form of noninvasive medical imaging in which high-intensity sound waves are used to visualize structures inside of a patient's body. Healthcare providers use ultrasound exams to obtain images from inside a patient's body for several purposes, including to help to identify medical conditions and for image guidance while conducting certain medical procedures such as surgeries.

13.     While ultrasound equipment can be used to visualize (though not diagnose) at least certain tumors, it cannot be used to visualize or diagnose any type of blood cancer. Moreover, ultrasound equipment is not capable of treating cancer or any other type of disease, and no ultrasound machine has been approved by FDA to treat diseases in humans. No ultrasound machine is capable of performing non-invasive prostate exams, measuring PSA levels, or performing EKGs.

14.     Defendants MARY BLAKLEY and FRED BLAKLEY typically charged a client $300 for a full body scan. The Blakley Clinics did not accept medical insurance, so

4

persons seeking medical treatment from defendant MARY BLAKLEY and the Blakley Clinics were required to pay the full charge out of their pockets.

15.    In order to promote the business of the Blakley Clinics, and to enrich themselves, defendant MARY BLAKLEY and defendant FRED BLAKLEY sold to third persons, located in the Eastern District of Pennsylvania and elsewhere, ultrasound machines that defendant MARY BLAKLEY and defendant FRED BLAKLEY, and their employees and associates, falsely and fraudulently claimed had been enhanced with defendant MARY BLAKLEY's purported "smart chip technology" so that they could perform defendant MARY BLAKLEY's full body scans.

16.    In order to promote the business of the Blakley Clinics, and to enrich themselves, for a substantial fee defendant MARY BLAKLEY and defendant FRED BLAKLEY, and their employees and associates, provided purported instruction, training, and advice to the third-party purchasers and purported purchasers, located in the Eastern District of Pennsylvania and elsewhere, of ultrasound machines from defendant MARY BLAKLEY and defendant FRED BLAKLEY, to enable those third parties to charge members of the public for the false, fraudulent, and detrimental services that they provided.

*Prescription of Unapproved Products to Treat Human Diseases*

17.    Defendant MARY BLAKLEY, defendant FRED BLAKLEY, and their employees and associates, falsely and fraudulently prescribed to their human clients various supplements, creams, and veterinary products as treatments for conditions purportedly discovered during the full body scans conducted at the Blakley Clinics.

18.    The more conditions that defendant MARY BLAKLEY purported to diagnose with her full body scan, the more supplements, creams, and veterinary products that

5

defendant MARY BLAKLEY, defendant FRED BLAKLEY, and their employees and associates could sell to clients of the Blakley Clinics.

19.    Defendant MARY BLAKLEY, defendant FRED BLAKLEY, and their employees and associates, profited from their sale of supplements, creams, and veterinary products to clients of the Blakley Clinics.

20.    Among the supplements, creams, and veterinary products prescribed by defendant MARY BLAKLEY, defendant FRED BLAKLEY, and their employees and associates, were Aetheion cream ("Aetheion"), fenbendazole, and ProArgi9+. None of them were ever approved by the FDA to treat diseases in human beings.

21.    Defendant MARY BLAKLEY, defendant FRED BLAKLEY, and their employees and associates, falsely claimed that Aetheion cream had various healing properties, including the ability to treat cancer, gastric hernias, and various other conditions. For example, defendants MARY BLAKLEY and FRED BLAKLEY repeatedly claimed that Aetheion would pull cancer cells out through the client's skin. They prescribed, promoted, and sold Aetheion to treat various conditions in their human clients despite the fact that Aetheion has never been approved by the FDA as a drug. In fact, Aetheion is labeled as a cosmetic that is advertised in the mainstream as a cosmetic product and skin therapy antioxidant moisturizer that strengthens skin against daily external aggressors.

22.    Defendant MARY BLAKLEY, defendant FRED BLAKLEY, and their employees and associates also promoted fenbendazole to treat cancer in their human clients. For example, defendants MARY BLAKLEY and FRED BLAKLEY claimed that fenbendazole effectively treated cancer, including such cancers as breast cancer and blood cancer.

23.    Fenbendazole is an antiparasitic that is used as the active ingredient in an

animal drug, which is approved by the FDA for use in many different animal species, including dogs, cats, horses, cattle, and wildlife, to treat various parasites including lung worms, stomach worms, and intestinal worms. Fenbendazole is not approved for use in humans. Defendant MARY BLAKLEY, defendant FRED BLAKLEY, and their employees and associates prescribed, promoted, and sold fenbendazole, under various names, to treat cancer in their human clients despite the fact that fenbendazole has only been approved by the FDA as a drug for use in animals.

24.     Defendant MARY BLAKLEY, defendant FRED BLAKLEY, and their employees and associates also prescribed ProArgi9+ as medicine to human clients of the Blakley Clinics to treat various cardiovascular related diseases and prevent heart attacks. For example, defendant MARY BLAKLEY claimed that ProArgi9+ would remove plaques from the inside of clients' blood vessels, would thin the blood, and would dissolve blood clots. Defendant MARY BLAKLEY also claimed that ProArgi9+ would treat multiple sclerosis and diabetes and told one person that ProArgi9+ was "medicine" that would save that person's life.

25.     ProArgi9+ has never been approved by the FDA as a drug to treat diseases in humans. Instead, it has typically been sold only as a dietary supplement. This means that it is not to be sold or promoted to diagnose, treat, cure, or prevent any disease.

26.     In order to promote the business of the Blakley Clinics, and to enrich themselves, defendant MARY BLAKLEY, defendant FRED BLAKLEY, and their employees and associates, made false and fabricated claims about defendant MARY BLAKLEY's personal history, education, training, experience, qualifications, and credentials. Among other things, defendant MARY BLAKLEY falsely claimed that she was awarded a Ph.D. degree in radiation nuclear physics by the Karolinska Instituet in Sweden. To support that claimed credential,

defendant MARY BLAKLEY falsely asserted that she held dual U.S./Swedish citizenship. In truth and in fact, defendant MARY BLAKLEY was never awarded a degree from the Karolinska Instituet; was born and raised in the United States; and is a citizen of the United States and not Sweden.

27.    In order to promote the business of the Blakley Clinics, and to enrich themselves, defendant MARY BLAKLEY, defendant FRED BLAKLEY, and their employees and associates also falsely claimed that defendant MARY BLAKLEY worked as a cancer specialist and researcher at Cancer Center A, a particular renowned cancer center located in Houston, Texas and known to the grand jury. In truth and in fact, defendant MARY BLAKLEY was never employed by Cancer Center A.

28.    In order to promote the business of the Blakley Clinics, and to enrich themselves, defendant MARY BLAKLEY, defendant FRED BLAKLEY, and their employees and associates also falsely claimed that defendant MARY BLAKLEY was part of a research team that developed fenbendazole while employed by Pharmaceutical Company A, known to the grand jury, and that, from this experience, she knew that fenbendazole "cures cancer" but that Pharmaceutical Company A suppressed this information so that it would not lose money promoting their other cancer treatment drugs. In truth and in fact, defendant MARY BLAKLEY was never employed by Pharmaceutical Company A in any capacity.

### THE CONSPIRACY

29.    From at least in or about March 2021 through at least in or about November 2024, in the Eastern District of Pennsylvania, and elsewhere, defendants

**MARY BLAKLEY and**
**FRED BLAKLEY**

conspired and agreed together and with other persons known and unknown to the grand jury, to

commit mail fraud and wire fraud, that is, to knowingly execute and attempt to execute a scheme to defraud clients of the Blakley Clinics, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, in violation of 18 U.S.C. §§ 1341 and 1343.

## MANNER AND MEANS

It was part of the conspiracy that defendant MARY BLAKLEY, defendant FRED BLAKLEY, employees and associates of defendants MARY BLAKLEY and FRED BLAKLEY, and others known and unknown to the grand jury:

30.     Made false and fraudulent claims about capabilities of ultrasound machines generally, and of the particular machines employed by defendant MARY BLAKLEY and the Blakley Clinics.

31.     Made false and fraudulent claims that the Blakley Clinics, and its procedures and processes were FDA certified.

32.     Made false and fraudulent diagnoses to support the claimed need for further scans and for the sale of various supplements, creams, and veterinary products to clients of the Blakley Clinics.

33.     Conducted false and fraudulent full body scans and medical procedures and made false and fraudulent diagnoses to prescribe substances that they falsely claimed had the ability to cure the conditions purportedly discovered by the full body scans.

34.     Profited from the provision of full body scans to clients of the Blakley Clinics.

35.     Profited from the sale of supplements, creams, and veterinary products to clients of the Blakley Clinics delivered and caused to be delivered through the U.S. mails and commercial carriers to the Eastern District of Pennsylvania and elsewhere.

9

36.     Profited from the provision of training to "students," located in the Eastern District of Pennsylvania and elsewhere, in the conduct of full body scans using ultrasound machines that purported to employ defendant MARY BLAKLEY's purported "smart chip technology."

37.     Profited from the sale of ultrasound machines that purported to employ defendant MARY BLAKLEY's purported "smart chip technology," thereby allowing those machine purchasers to conduct scans, and make purported diagnoses, for which they would charge members of the public.

38.     Cautioned clients of the Blakley Clinics that, if the supplements, creams, and veterinary products prescribed by defendant MARY BLAKLEY, defendant FRED BLAKLEY, and employees and associates of defendants MARY BLAKLEY and FRED BLAKLEY, were not used for the rest of the client's life, the illness or condition for which they had been prescribed would return.

39.     Used the Internet, including Yelp.com and Alignable.com, to promote the business of the Blakley Clinics by making false and fraudulent claims.

40.     In order to promote the business of the Blakley Clinics, and in order to convince clients to purchase treatments, prescriptions, and procedures, defendant MARY BLAKLEY, defendant FRED BLAKLEY, and their employees and associates made false and fabricated claims about defendant MARY BLAKLEY's education, training, experience, qualification, and credentials.

41.     To avoid detection by law enforcement officials and to avoid oversight by the FDA, defendant MARY BLAKLEY, defendant FRED BLAKLEY, and their employees and associates employed devices to shield their identities and activities, including frequent changes

10

in business name and location; frequent changes in the telephone numbers that they used to conduct Blakley Clinics business; favoring payment in non-traceable forms, such as cash or gold, and refusing insurance; and a persistent refusal to keep client medical records or financial records.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS TWO THROUGH FIVE
### (Wire Fraud)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1 through 28 of Count One are incorporated here.

### THE SCHEME TO DEFRAUD

2.      From at least in or about March 2021 through at least in or about

November 2024, in the Eastern District of Pennsylvania and elsewhere, defendants

### MARY BLAKLEY and
### FRED BLAKLEY

devised and intended to devise a scheme to defraud clients and prospective clients of the Blakley

Clinics, and to obtain money and property by means of false and fraudulent pretenses,

representations, and promises.

### MANNER AND MEANS

It was part of the scheme that:

3.      Paragraphs 30 through 41 of Count One are incorporated here.

### THE WIRINGS

4.      On or about each of the dates set forth below, in the Eastern District of

Pennsylvania, and elsewhere, having devised and intending to devise this scheme, defendants

### MARY BLAKLEY and
### FRED BLAKLEY

for the purpose of executing the scheme described above, caused to be transmitted by means of

wire communication in interstate and foreign commerce the signals and sounds described below,

each transmission constituting a separate count:

12

| COUNT | APPROXIMATE DATE (AND TIME) | DESCRIPTION |
|---|---|---|
| 2 | May 21, 2021, at 20:45 UTC | Telephone call from Individual No. 1, known to the grand jury, from the Eastern District of Pennsylvania, to Associate No. 1, known to the grand jury, outside the Commonwealth of Pennsylvania, discussing the purported medical benefits of Aetheion. |
| 3 | November 15, 2022, at 3:56 p.m. | Email from defendant MARY BLAKLEY outside the Commonwealth of Pennsylvania to Individual No. 3, known to the grand jury, in the Eastern District of Pennsylvania, discussing the purported smart chip on the machine that Individual No. 3 had purchased. |
| 4 | November 21, 2022, at 20:41 UTC | Telephone call between defendant FRED BLAKLEY and defendant MARY BLAKLEY, outside the Commonwealth of Pennsylvania, and Individual No. 3, in the Eastern District of Pennsylvania, providing instruction on the conduct of full body scans. |
| 5 | August 2, 2023, at 15:47 UTC | Telephone call from Individual No. 2, known to the grand jury, in the Eastern District of Pennsylvania, to Associate No. 2, known to the grand jury, outside the Commonwealth of Pennsylvania, discussing the purported medical benefits of fenbendazole. |

All in violation of Title 18, United States Code, Section 1343.

## COUNTS SIX THROUGH EIGHT
### (Mail Fraud)

**THE GRAND JURY FURTHER CHARGES THAT:**

1. Paragraphs 1 through 28 of Count One are incorporated here.

### THE SCHEME TO DEFRAUD

2. From at least in or about March 2021 through at least in or about

November 2024, in the Eastern District of Pennsylvania, and elsewhere, defendants

### MARY BLAKLEY and
### FRED BLAKLEY

devised and intended to devise a scheme to defraud clients and prospective clients of the Blakley

Clinics, and to obtain money and property from them, by means of false and fraudulent

pretenses, representations and promises.

### MANNER AND MEANS

It was part of the scheme that:

3. Paragraphs 30 through 41 of Count One are incorporated here.

### THE MAILINGS

4. On or about each of the dates set forth below, in the Eastern District of

Pennsylvania, and elsewhere, having devised and intending to devise this scheme, defendants

### MARY BLAKLEY and
### FRED BLAKLEY

for the purpose of executing the scheme described above, knowingly caused to be delivered on or

about the date listed below, by the United States Postal Service or by private or commercial

interstate carrier, according to the directions thereon, the packages listed below, each mailing

constituting a separate count:

14

| COUNT | APPROXIMATE DATE | DESCRIPTION |
|:---:|:---:|---|
| 6 | August 31, 2022 | Bank check mailed from the Eastern District of Pennsylvania via U.S. Mail in partial payment for purchase of ultrasound machine. |
| 7 | January 13, 2023 | A package containing two bottles of Aetheion cream sent by Associate No. 1 to Individual No. 2 via U.S. Mail to the Eastern District of Pennsylvania. |
| 8 | June 12, 2023 | A package containing two bottles of fenbendazole sent by Associate No. 2 to Individual No. 2 via U.S. Mail to the Eastern District of Pennsylvania. |

All in violation of Title 18, United States Code, Section 1341.

## COUNT NINE
### (Conspiracy to defraud the FDA and to violate the Act)

**THE GRAND JURY FURTHER CHARGES THAT:**

    1.    Paragraphs 1 through 28 of Count One are incorporated here.

    2.    One of the central animating purposes of the Act is to protect the health and safety of the American consuming public by assuring that drugs, among other things, are safe and effective for their intended uses before they are sold. One method that the Act employs to achieve this objective is by prohibiting introducing, delivering for introduction, and causing the introduction or delivery for introduction, into interstate commerce any drug that is misbranded. Title 21, United States Code, Sections 331(a) and 352.

    3.    Defendant MARY BLAKLEY, defendant FRED BLAKLEY, and their employees and associates, made oral and written representations to clients of the Blakley Clinics prescribing, promoting, recommending, and selling Aetheion, fenbendazole, and ProArgi9+: (i) to diagnose, cure, mitigate, prevent, or treat disease in human beings; and (ii) to affect the structure and any function of the body of human beings.

    4.    Defendant MARY BLAKLEY, defendant FRED BLAKLEY, and their employees and associates, introduced or delivered for introduction, and caused the introduction or delivery for introduction, into interstate commerce of Aetheion which was misbranded in that, among other things, its labeling was false or misleading and it failed to bear adequate directions for the uses for which the defendants prescribed, promoted, recommended, and sold Aetheion.

    5.    Defendant MARY BLAKLEY, defendant FRED BLAKLEY, and their employees and associates, introduced or delivered for introduction, and caused the introduction or delivery for introduction, into interstate commerce of fenbendazole which was misbranded in that, among other things, its labeling was false or misleading and it failed to bear adequate

16

directions for the uses for which the defendants prescribed, promoted, recommended, and sold fenbendazole.

      6.     Defendant MARY BLAKLEY, defendant FRED BLAKLEY, and their employees and associates, introduced or delivered for introduction, and caused the introduction or delivery for introduction, into interstate commerce of ProArgi9+ which was misbranded in that, among other things, its labeling was false or misleading and it failed to bear adequate directions for the uses for which the defendants prescribed, promoted, recommended, and sold ProArgi9+.

## THE CONSPIRACY

      7.     From in or about at least March 2021 through at least in or about November 2024, in the Eastern District of Pennsylvania, and elsewhere, defendants

**MARY BLAKLEY and**
**FRED BLAKLEY**

conspired, combined, and agreed with each other, and with others known and unknown to the grand jury, to:

      a.     defraud the United States and its agencies by impeding, impairing, and defeating the lawful functions of the FDA to protect the health and safety of the public by ensuring that drugs marketed and distributed in the United States were safe and effective for their intended uses; and

      b.     commit an offense against the United States, by, with the intent to defraud and mislead, introducing and delivering for introduction, and causing the introduction and delivery for introduction, into interstate commerce of drugs that were misbranded in violation of Title 21 United States Code, Sections 331(a) and 352(a) and (f).

17

## MANNER AND MEANS

It was part of the conspiracy that defendant MARY BLAKLEY, defendant FRED BLAKLEY, employees and associates of MARY BLAKLEY and FRED BLAKLEY, and others known and unknown to the grand jury:

8.     Paragraphs 30 through 41 of Count One are incorporated here.

9.     Falsely claimed that they were only doing research when they were performing, distributing, and selling products and services.

10.    Falsely claimed that the products and services that they were performing, distributing, and selling were of a type for which regulatory requirements were less onerous or nonexistent.

11.    Used coded language to describe the products and services that they were performing, distributing, and selling, such as describing their purported cancer treatment as the elimination of bad cells, and by coaching others to take such deceptive measures.

12.    Disguised the nature of the Blakley Clinics, including as a religious organization, a health club, and a private membership organization, in an effort to avoid detection by law enforcement and oversight by the FDA.

13.    Adopted business practices that they believed would shield them from detection by law enforcement and oversight by the FDA, such as requiring clients to execute confidentiality agreements.

## OVERT ACTS

In furtherance of the conspiracy, and to effect its objects, defendant MARY BLAKLEY, defendant FRED BLAKLEY, and other co-conspirators known and unknown to the

18

grand jury, committed the following overt acts, among others, in the Eastern District of Pennsylvania:

1.      On or about May 17, 2021, defendant MARY BLAKLEY spoke on the telephone to Individual No. 1, falsely claimed to have a Ph.D. in radiation nuclear physics from the Karolinska Medical Institute and recommended that Individual No. 1 acquire Aetheion cream from a person identified here as Associate No. 1 to use to treat breast cancer.

2.      On or about May 21, 2021, Associate No. 1 spoke on the telephone to Individual No. 1, who was located in the Eastern District of Pennsylvania, and recommended that Individual No. 1 acquire Aetheion cream and fenbendazole to use to treat breast cancer.

3.      On or about September 7, 2022, defendant MARY BLAKLEY and defendant FRED BLAKLEY caused a bank check in the amount of $500, which had been mailed from the Eastern District of Pennsylvania, to be deposited in an Arizona Financial Credit Union bank account in the name of Living Well Ministries in partial payment for an ultrasound machine that they claimed employed defendant MARY BLAKLEY's "smart chip technology."

4.      On or about November 21, 2022, defendant MARY BLAKLEY and defendant FRED BLAKLEY conducted a telephone conversation with Individual No. 2 and Individual No. 3, who were located in the Eastern District of Pennsylvania, in which they purported to teach Individual No. 3 to operate an ultrasound machine and use defendant MARY BLAKLEY's "smart chip technology" to detect cancer.

5.      On or about January 13, 2023, Associate No. 1 shipped two bottles of Aetheion cream and one bottle of fenbendazole to Individual No. 2, to the Eastern District of Pennsylvania, by U.S. Mail.

6.     On or about April 7, 2023, Associate No. 1 held a telephone call with Individual No. 2, who was located in the Eastern District of Pennsylvania, during which Individual No. 2 gave Associate No. 1 a credit card number to pay for fenbendazole.

All in violation of Title 18, United States Code, Section 371.

## **NOTICE OF FORFEITURE**

**THE GRAND JURY FURTHER CHARGES THAT:**

        1.    As a result of the violations of Title 18, United States Code, Sections 1341, 1343 and 1349, set forth in this indictment, defendants

**MARY BLAKLEY and**
**FRED BLAKLEY**

shall forfeit to the United States of America any property, real or personal, constituting, or derived from, proceeds traceable to such violations, including, but not limited to $2,000,000:

        2.    If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

        a.  cannot be located upon the exercise of due diligence;

        b.  has been transferred or sold to, or deposited with, a third-party;

        c.  has been placed beyond the jurisdiction of the Court;

        d.  has been substantially diminished in value; or

        e.  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other

property of the defendants up to the value of the property subject to forfeiture.

All pursuant to Title 28 United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C).

**A TRUE BILL:**

**JACQUELINE C. ROMERO**
**UNITED STATES ATTORNEY**

22

No._ _ _ _ _ _ _ _

## UNITED STATES DISTRICT COURT

Eastern District of Pennsylvania

Criminal Division

## THE UNITED STATES OF AMERICA

v.

**MARY BLAKLEY**, a/k/a "Marye Blakley", a/k/a "Mary Blakely", a/k/a "Mary Blakeley", a/k/a "Mary Davis", a/k/a "Mary Venable", a/k/a "Mary Cammer", a/k/a "Rosemary Cammer", a/k/a "Rosemary Davis", a/k/a "Yvonne Davis", a/k/a "Mary Blaksley"
**FRED BLAKLEY**, a/k/a "Fred Blakely", a/k/a "Floyd Blakely"

## INDICTMENT

### Counts

18 U.S.C. § 1349 (mail and wire fraud conspiracy – 1 count); 18 U.S.C. § 1343 (wire fraud – 4 counts); 18 U.S.C. § 1341 (mail fraud – 3 counts); 18 U.S.C. § 371 (conspiracy – 1 count); **Notice of forfeiture**



_____ day, _____

Fil__