IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NUMBER 25-8** |
| **MARY BLAKLEY**<br>**FRED BLAKLEY** | : | |

**DEFENDANTS' JOINT OMNIBUS RESPONSE**
**TO THE GOVERNMENT'S MOTIONS *IN LIMINE***

Defendants[1] respectfully submit this joint Omnibus Response to the government's Motions *in limine* (Docs. No. 79, 80, 81 and 82) seeking a number of pre-trial rulings in the above-captioned case. Defendants do not oppose Docket Entries 81 and 82, the government's Starks/Rule 901 Motion and Motion to authenticate and deem certain records non-hearsay at this time. As to the Rule 901 Motion, the defense notes that, to date, we have not received final transcripts. However, the remaining government Motions must be denied. In response, Defendants respectfully request the following pre-trial rulings:

**I. The Government's Motion *in limine* to Exclude Hearsay and Extraneous Health History From Client-Witness Testimony Should be Denied in Part and Granted in Part (Doc. No. 79).**

In its first Motion, the government seeks to preclude two categories of evidence. First, the government argues that any statements made by licensed doctors or other health care professionals to the clients of the Blakleys' clinics must be excluded as inadmissible hearsay. Gov't Mot. 3-4. Second, the Motion seeks to preclude Defendants from introducing any

[1] Counsel for Defendant Mary Blakley respectfully files this Joint Omnibus Response on behalf of both Defendants.

evidence of the Blakleys' clients' subsequent health developments or outcomes after visiting the Blakleys' clinics. Gov't Mot. 6. The Defendants respectfully submit that certain statements made to the alleged victim-clients by their doctors or other health care professionals are admissible to show the effect on the listener or to explain the clients' subsequent actions and how they bore on the Blakleys' mental state with regard to the charged offenses.

**A. Statements by doctors and other health care professionals are admissible to show the effect on the clients and their subsequent actions.**

The government first argues that any statements made to the Blakleys' clients by their doctors or other medical professionals are inadmissible hearsay "if recited by the client-witness to establish the truth of that diagnosis or the existence of the diagnosed condition." Gov't Mot. 4. The government argues that the hearsay exception embodied at Federal Rule of Evidence 803(4) does not apply to these statements. Gov't Mot. 7. Out-of-court statements are not excluded by the general bar against hearsay where they "(A) [are] made for—and [are] reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause." FED. R. EVID. 803(4). The Rule's Advisory Committee Notes indicate courts have admitted such statements "if made to a physician for purposes of diagnosis and treatment" under the rationale that patients have a "strong motivation to be truthful" under these circumstances. FED. R. EVID. 803(4), Advisory Committee's Notes.

The government correctly points out that under this rationale, courts have held that statements made by doctors to patients are not admissible under this hearsay exception. *See, e.g. Plunkard v. Marks*, No. 1:18-CV-01536, 2021 WL 8013872, at *8 (M.D. Pa. May 4, 2021). However, the Federal Rules of Evidence define hearsay as out-of-court statements that "a party offers in evidence to prove the truth of the matter asserted in the statement." FED. R. EVID.

801(c). The Third Circuit has specifically upheld the admission of statements made by doctors to trial witnesses that are offered for a purpose other than proving the truth of what the doctor allegedly said. *Rinehimer v. Cemcolift*, 292 F.3d 375, 379, 383 (3d Cir. 2002) (in disability employment suit, company doctor's statement to vice president of company that plaintiff-employee "could not wear a respirator" was admissible because it was offered to show why the vice president "did not allow Rinehimer to return to his job as a working foreman and wear a respirator" and not to "prove Rinehimer could not wear a respirator"). Furthermore, the Third Circuit has recognized that statements are non-hearsay when they are only offered to prove the statements' effect on the listener. *United States v. Edwards*, 792 F.3d 355, 357 (3d Cir. 2015) (defendant's testimony about what he was told to do by an associate during certain phone calls was admissible for the non-hearsay purpose of proving their effect on defendant).

      The government admits that some statements made by doctors or medical professionals to client-witnesses in this case could be offered for the non-hearsay purpose of explaining the witness-client's subsequent actions, but argues they may still be irrelevant or inadmissible under Rule 403's ban on unfairly prejudicial evidence. Gov't Mot. 4 n. 3. The precise contours of the defense strategy is not fully crystallized at this juncture, with trial being over a month away. Nor have counsel for the Blakleys made final decisions on which, if any, doctor and medical professional statements might be elicited on cross-examination at trial. So, a precise Rule 403 analysis appears premature. That being said, the defense agrees that statements made by doctors and medical professionals to client-witnesses are inadmissible hearsay if offered to prove the truth of those diagnoses. Defendants will not offer any statements by doctors to prove the truth of the matter asserted. The only context in which they will be elicited is to prove the effect on the listener and/or to explain the client-witness's subsequent actions. As such, Defendants

respectfully request that the Court deny the government's Motion with respect to the doctor-statements subject to renewal at trial if the government has a cognizable Rule 403 argument in the context of the facts under which such statements are offered.

### B. Defendants will not elicit testimony about positive health outcomes

The government next moves to preclude the Blakleys from eliciting testimony at trial about client-witnesses' subsequent health developments after visiting the clinics. Gov't Mot. 6. Defendants do not intend to offer testimony at trial about client-witnesses' subsequent health developments after visiting the clinics. Consequently, this portion of the government's Motion is unopposed.

## II. The Government's Motion *in limine* to Admit Evidence of Defendants' Prior Prison Sentences as Intrinsic Evidence and/or Under Federal Rule of Evidence 404(b) Should be Denied (Doc. No. 80).

The government next moves the Court for permission to admit evidence that Mary and Fred Blakley were both incarcerated in federal prison from 1997 to at least 2001. Gov't Mot. 1. Specifically, the government seeks to admit evidence that Mary Blakley and "other members of the conspiracy" made false claims about her training, experience and credentials, including: (1) that she worked at a cancer center in Houston, Texas for over 30 years; (2) that she worked at Merck & Co. in Rahway, New Jersey, and (3) that she earned a Ph.D in Sweden after studying for over a decade. Gov't Mot. 2.

The government intends to prove the above claims were false and that the Defendants knew they were false based on a "timeline of verifiable facts [which] make[] it impossible for these claims to be true." Gov't Mot. 2-3. The government alleges that Mary Blakley could not have worked at a cancer center for over 30 years or at Merck & Co. after studying for ten years

in Sweden because she was incarcerated for several years during the same time period. Gov't Mot. 3.

The government proffers evidence of the Blakleys' incarceration as intrinsic evidence but argues that should the Court deem it extrinsic, it should still be admitted under Rule 404(b), which governs the admissibility of extrinsic evidence. FED. R. EVID. 404(b); *United States v. Bailey*, 840 F.3d 99, 128 (3d Cir. 2016) (explaining that Rule 404(b) applies to extrinsic evidence but not intrinsic, which is not a "prior bad act at all"). Rule 404(b) states that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." FED. R. EVID. 404(b)(1). Such evidence may only be admitted "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."[2] FED. R. EVID. 404(b)(2).

**A. Intrinsic Evidence**

The Third Circuit has explained that Rule 404(b) does not apply to intrinsic evidence because it is "part and parcel of the charged offense." *United States v. Williams*, 974 F.3d 320, 357 (3d Cir. 2020) (quoting *United States v. Green*, 617 F.3d 233, 245 (3d Cir. 2010)). In our Circuit, intrinsic evidence is limited to that which: (1) "directly proves the charged offense" or (2) "uncharged acts performed contemporaneously with the charged crime . . . if they facilitate[d] the commission of the charged crime." *Green*, 617 F.3d at 248-49 (quoting *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000)) (additional citations omitted); *see also Bailey*, 840 F.3d at 128 (quoting *Green*, 617 F.3d at 248-49); *Williams*, 974 F.3d at 357 (citation omitted).

[2] Defendants agree the government has provided notice of its intent to introduce the contested evidence in accordance with Federal Rule of Evidence 404(b)(3).

"This suggests that the nature and scope of the evidence able to be deemed intrinsic will vary with the charged offense." *Williams*, 974 F.3d at 357.

When the indictment charges a conspiracy, "courts have afforded the prosecution considerable leeway to present evidence, even of unalleged acts within the indictment period, that reflects a conspiratorial agreement or furtherance of the conspiracy's illegal objectives." *Id.* (collecting cases). That being said, contemporaneity is still an important guidepost. The Third Circuit has explained that even though "proof of conspiracies is not limited to the charged start and end dates, the indictment's temporal parameters usually delineate the boundary between intrinsic and extrinsic evidence." *Bailey*, 840 F.3d at 128. Evidence falling outside the indictment's parameters, if deemed extrinsic, must meet the "restrictions of Rule 404(b)." *Id.* Although "[t]he fact that evidence is intrinsic establishes its probative value," *Williams*, 974 F.3d at 357, intrinsic evidence must still satisfy Rule 403's prejudice-probity balancing test. *See, e.g.* *Green*, 617 F.3d at 247.

**B. Rule 404(b) Evidence**

Extrinsic other acts evidence is "acts that are not the basis of the current prosecution." *United States v. Davis*, 726 F.3d 434, 441 n. 5 (3d Cir. 2013). The Third Circuit has noted the tendency of propensity evidence to "overpersuade[]" the jury "without limitations based on whether the charged and uncharged acts are the same." *United States v. Smith*, 725 F.3d 340, 347 (3d Cir. 2013) (quoting *Michelson v. United States*, 335 U.S. 469, 476 (1948)). Subsequently, the Third Circuit clarified that Rule 404(b) functions as a "rule of general exclusion, and carries with it 'no presumption of admissibility.'" *United States v. Caldwell*, 760 F.3d 267, 276 (3d Cir. 2014) (quoting Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 4.28, at 731 (4th ed. 2013)).

Previous Third Circuit cases referring to Rule 404(b) as "inclusionary" referred to the fact that "the drafters[]" did not make the Rule's laundry-list of proper non-propensity purposes exhaustive. Those cases did not assume or "suggest that prior offense evidence is presumptively admissible." *Id.* Thus, "'[t]he permitted uses' of prior act evidence set forth in Rule 404(b)(2) are treated like exceptions to this rule of exclusion," and the burden is on the government, who is seeking to admit the evidence, to demonstrate the rule's applicability. *Id.*

There is a four-prong test to determine whether evidence of the other crimes, wrongs or acts is admissible under Rule 404(b). *See Huddleston v. United States*, 485 U.S. 681 (1988); *United States v. Scarfo*, 850 F.2d 1015 (3d Cir.), *cert. denied*, 488 U.S. 910 (1988). To be admissible, the proponent must persuade the court the proffered evidence is: "(1) offered for a non-propensity purpose; (2) relevant to that identified purpose; (3) sufficiently probative under Rule 403 so its probative value is not [substantially] outweighed by any inherent danger of unfair prejudice; and (4) accompanied by a limiting instruction, if requested." *United States v. Scarfo*, 41 F.4th 136, 179 (3d Cir. 2022) (quoting *United States v. Garner*, 961 F.3d 264, 273 (3d Cir. 2020)) (alteration in original); *see also Smith*, 725 F.3d at 344 (citing *Huddleston*, 485 U.S. at 691).

*1. The evidence must be offered for a proper evidentiary purpose*

With respect to the "proper purpose" requirement, the Third Circuit has explained that "[i]n evaluating whether an identified purpose is 'at issue,' courts should consider the 'material issues and facts the government must prove to obtain a conviction.'" *Caldwell*, 760 F.3d at 276 (quoting *United States v. Sampson*, 980 F.2d 883, 888 (3d Cir. 1992)). The Third Circuit has repeatedly stressed that "a proponent's incantation of the proper uses of [prior act] evidence . . . does not magically transform inadmissible evidence into admissible evidence." *Id.* (quoting

*United States v. Morley*, 199 F.3d 129, 133 (3d Cir. 1999)) (alterations in original). Instead, the proponent is required to "identify a specific purpose that 'is of consequence in determining the action.'" *Id.* (quoting FED. R. EVID. 401(b)).

As to Fred Blakley, the government fails at this step. The government asserts that Mary Blakley and other members of the conspiracy made certain false claims about her background that can be disproved because she was in custody during the relevant time frames. The government argues that this "showing is particularly important for Fred Blakley, as the government must prove that Fred knew that 'Dr. Mary' did not have the education and experience that she claimed." Gov't Mot. 6-7.

However, the government has failed to show that the identified purpose is even "at issue." The government has not and cannot demonstrate that Fred Blakley made, adopted, furthered, or was present for any statements made by Mary about her training in Sweden, her work at Merck, or her work at MD Anderson Cancer Center. The government itself asserts that Mary's "claims about [her] credentials were far from consistent." Gov't Mot. 3 n. 1. The government has not demonstrated that Fred Blakley was present at any time that Mary allegedly made these claims, or that he made any such claims.[3] The evidence is clear that Fred Blakley was rarely present at the "Blakely Clinics," was not involved in the scanning process, and was not present for the majority of hours of the agent's recorded interactions with Mary Blakley.

---

[3] The defense has conducted an independent review. There is one dinner between the agents and both Blakleys where Sweden is mentioned. During that dinner, Mary Blakley does mention earning a degree abroad. However, that conversation takes place in a loud restaurant. Both agents are wearing recording devices. Mary is speaking to one agent directly while Fred is speaking to the other. Mary's statement can only be heard on the audio of the agent she is speaking to, and not on the audio of the agent Fred is speaking to. Other than that, the defense can find no evidence that Fred was present for any of the statements identified in the Government's briefing.

Because the government cannot show Fred Blakley had any knowledge of, or involvement in the expression of the statements outlined by the government, there is no need to demonstrate to a jury whether Fred Blakely knew the statements were false. Meaning, the government has no proper purpose to introduce the Blakley's incarceration records.

Moreover, the government is not required to show that Fred Blakley knew whether every statement that Mary Blakley made was true or false. The government is not required to prove that he was aware of all misrepresentations they allege were made by his co-conspirator. In order for the government to prove mail or wire fraud, "it [is] not necessary to prove that [a defendant] knew all the details of the conspiracy or all of its participants." *United States v. Boscia*, 573 F.2d 827, 834 (3d Cir. 1978) (citing *Blumenthal v. United States*, 332 U.S. 539, 556-57 (1947)).

The government holds other recordings of Fred Blakley where he discusses the work of the clinic or the machines used by Mary Blakley. While not necessary to sustain a conviction, the government asserts these representations are false and can introduce these statements if it wishes to advance statements or adoptions specific to Fred Blakley.

*2. The evidence must be relevant*

The second *Huddleston* step, relevance, is critical because "[t]he task is not merely 'to find a pigeonhole in which the proof might fit,' but to actually demonstrate that the evidence 'prove[s] something other than propensity.'" *Caldwell*, 760 F.3d at 276 (quoting Mueller, *Federal Evidence* § 4:28, at 731) (alteration in original). "In proffering such evidence, the government must explain how it fits into a chain of inferences – a chain that connects the evidence to a proper purpose, no link of which is a forbidden propensity inference." *Davis*, 726 F.3d at 442 (citing *Sampson*, 980 F.2d at 887). "To be sure, the proffered evidence must be excluded if the proponent neglects or is unable to articulate this chain of inferences, and failure

to exclude such evidence constitutes reversible error." *Caldwell*, 760 F.3d at 277 (citing *Sampson*, 980 F.2d at 888).

The Third Circuit in *Caldwell* emphasized that "'[r]elevance is not an inherent characteristic' of the purposes under Rule 404(b)." *Id.* (quoting *Sampson*, 980 F.2d at 888) (alteration in original). This is because evidence that is relevant for some purpose "'may be irrelevant for the purpose for which it is offered,' or only relevant in some impermissible way." *Id.* (quoting *Morley*, 199 F.3d at 133). "Relevance is a relationship between the evidence and a material fact at issue which must be demonstrated by reasonable inferences that make a material fact more probable or less probable than it would be without the evidence." *Id.* (quoting *Sampson*, 980 F.2d at 888). Thus, the Third Circuit is "emphatic in requiring the proponent and the trial judge to articulate, with precision, a chain of inferences that does not contain a propensity link." *Id.*

*3. The evidence must pass muster under Rule 403's prejudice-probity balancing test*

The third *Huddleston* step requires the district court to determine whether the other bad acts evidence is "sufficiently probative, such that its probative value is not outweighed by the inherently prejudicial nature of prior bad act evidence." *Caldwell*, 760 F.3d at 277 (citing *Sampson*, 980 F.2d at 889; *Smith*, 725 F.3d at 349). "This balancing requires great care on the part of the district court, 'because few categories of evidence bring greater risk of prejudice to the accused under Rule 403.'" *Id.* (quoting Mueller, *Federal Evidence* § 4:28, at 731). Rule 403, which also applies to intrinsic evidence as noted above, permits the exclusion of relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. To determine

the admissibility of evidence under Rule 403, the Court must weigh: (1) the need for the evidence in light of (a) the contested trial issues and (b) the other evidence available to the government; (2) the strength of the evidence; and (3) the danger that the evidence will inflame the jurors and cause them to convict on impermissible grounds. *See United States v. Sriyuth*, 98 F.3d 739, 748 (3d Cir. 1996) (citations omitted).

*4. The district court must provide a limiting instruction if requested*

The final Rule 404(b) step requires the District Court to provide the jury with a limiting instruction upon a defense request advising it "that the evidence is admissible for a limited purpose and may not be considered in another manner." *Caldwell*, 760 F.3d at 277. Here, the Blakleys' position is that no limiting instruction would suffice to ameliorate the prejudice to them if their previous incarceration in federal prison is admitted at trial. That being said, the Defendants respectfully request, and will submit, limiting instructions for any evidence the Court admits under Rule 404(b) depending on the Court's ruling.

**C. Whether deemed intrinsic or proper Rule 404(b) evidence, the Blakleys' previous incarceration should be precluded under Rule 403.**

The defense for Mary Blakley concedes that evidence of the Blakleys' prior incarceration directly proves the impossibility of Mary's claims about her training and experience or, in the alternative, that proving the falsity of Mary's claims about her background and her knowledge of those falsities are proper Rule 404(b) purposes relevant to proving contested issues at trial. Fred Blakley, as argued above, makes no such concession. For both Mary and Fred Blakley, however, this highly inflammatory and unnecessary evidence must be precluded under Rule 403.

As noted above, Rule 403 requires the Court to balance: (1) the need for the incarceration evidence in light of (a) the contested trial issues and (b) the other evidence available to the government; (2) the strength of the evidence; and (3) the danger that the evidence will inflame

the jurors and cause them to convict on impermissible grounds. *Sriyuth*, 98 F.3d at 748. Here, the government is required to prove the Blakleys knowingly devised a scheme to defraud by materially false pretenses, representations or promises. *Third Circuit Model Criminal Jury Instructions* §§ 6.18.1341 and 1343. Furthermore, the fact that Mary Blakley's statements about her background training and experience are physical impossibilities due to her overlapping incarceration is evidence supporting an inference she knew her statements were false.

That being said, the government has a plethora of other evidence available to prove its charges and specifically to prove that Mary's claims about her background and credentials were false. On information and belief, the government contacted school officials and others in Sweden to confirm there is no record of her attending or graduating school there and that she never attended classes in Sweden. The Government has confirmed that neither Mary nor Fred Blakley has ever possessed a passport. Furthermore, the government could easily contact MD Anderson in Houston or Merck & Co. in New Jersey and obtain a certification from a custodian of records under Federal Rules of Evidence 803(6) and 803(7) demonstrating a lack of records indicating she was ever employed there. FED. R. EVID. 803(7) (an absence of a record of a regularly conducted activity is a hearsay exception where (1) offered "to prove that the matter did not occur or exist;" (2) "a record was regularly kept for a matter of that kind; and" (3) "the opponent does not show that the possible source of the information or other circumstances indicate a lack of trustworthiness."). Schools and business regularly keep and maintain records of their former students and employees for a variety of purposes, such as verifying employment and education for background checks and verifying applicants' resumes and references. Such records would readily prove the falsity of Mary's alleged statements to client-witnesses from which the jury could easily infer she and her husband knew these statements were false simply

by virtue of the fact they she knew she was not in the places she said she was or doing the work and training she said she did during those relevant times.

In light of the other evidence available to the government, the government is clearly making a back-door attempt to sully the character of the Blakleys and poison the jurors to believe they are the types of people who have been to federal prison before, making it more likely that they were making fraudulent misrepresentations during the vast time period covered by the superseding indictment. Even if offered for a proper purpose, the government wants to prove the falsity of Mary's claims about her background *in this way and with this evidence* so it can invite the jurors to infer or decide the Blakleys are the type of people who would lie to people to make money. The likelihood that the jurors would take the bait and convict on impermissible grounds is great; therefore, evidence of the Blakleys' prior incarceration carries too grave a risk of the unfair prejudice Rule 403 was designed to protect against. *See United States v. Starnes*, 583 F.3d 196, 215 (3d Cir. 2009) (citation omitted). The fact that the government will agree to sanitize the evidence by omitting the charges the Blakleys were convicted of does not cure the prejudice. It arguably exacerbates the prejudice by inviting the jury to speculate about what the convictions might be for and leaving open the possibility they were for similar fraud-related charges.

Third Circuit cases have indicated that a jury instruction admonishing the jury "that the evidence is admissible for a limited purpose and may not be considered in another manner" such as "proof of bad character or a propensity to commit crimes" can suffice to ameliorate any prejudice under certain facts. *United States v. Miah*, 120 F.4th 99, 113 (3d Cir. 2024) (quoting *Caldwell*, 760 F.3d at 277). However, the risk of unfair prejudice to the Blakleys if the unnecessary evidence of their former incarceration is admitted at trial is so inflammatory under the facts of this case that it overrides the typical presumption that jurors would be able to follow

a limiting instruction. *Cf. United States v. Vaulin*, 132 F.3d 898, 901 (3d Cir. 1997) (citation omitted). Accordingly, the government's motion to admit evidence of the Blakleys' previous incarceration should be denied.

## III. CONCLUSION

For the reasons set forth above, Defendants Mary and Fred Blakley respectfully request that the Court deny the government's Motion to exclude statements from doctors and medical professionals to client-witnesses and its Motion to admit evidence of their previous incarceration.

Respectfully submitted,

*/s/ Timothy A. Wright*
TIMOTHY A. WRIGHT
Assistant Federal Defender

**CERTIFICATE OF SERVICE**

I, Timothy A. Wright, Assistant Federal Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that I have caused a copy of Defendants' Joint Omnibus Response to the Government's Motions *in limine* to be filed and served electronically on all counsel of record through the Eastern District Clerk's Office Electronic Case Filing System ("ECF").

*/s/ Timothy A. Wright*
TIMOTHY A. WRIGHT
Assistant Federal Defender

DATE: December 12, 2025